IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JONATHAN STRICKLAND,

    Plaintiff,

v.                                                                                          Case No. 23-cv-116 KG/KRS

CITY OF LAS CRUCES, *et al.*,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on City Defendants' Daubert Motion No. I Excluding Plaintiff's Expert, Kelly Couch, (Doc. 69), filed March 3, 2024. Plaintiff filed his corrected Response, (Doc. 132), on February 6, 2025, and Defendants filed their Reply, (Doc. 145), on February 20, 2025. This matter is also before the Court on City Defendants' Daubert Motion No. III Excluding Plaintiff's Expert, Noah T. Kaufman, (Doc. 71), filed March 3, 2024. Plaintiff filed his corrected Response, (Doc. 134), on February 6, 2025, and Defendants filed their Reply, (Doc. 147), on February 20, 2025. Having considered the briefing and relevant case law, the Court grants in part and denies in part Defendants Motion to Exclude Mr. Couch and Dr. Kaufman.

    *I.*    *Background*

This case arises out of an incident in which Las Cruces Police Department (LCPD) officers, Joshua Savage, Manuel Frias, Nathan Krause, Daniel Benoit, and Anthony Lucero (Defendant Officers), shot Plaintiff on March 11, 2021. Plaintiff brings claims under Title 42 U.S.C. §§ 1983 and 1988; the Fourth and Fourteenth Amendments to the United States Constitution; and state law claims of battery, assault, intentional infliction of emotional distress, and negligence. (Doc. 1).

Defendants move to exclude the opinions and testimony of Plaintiff's expert, Mr. Couch, pursuant to Federal Rule of Evidence 702. (Doc. 69). Plaintiff offered Mr. Couch as a police procedures expert. (Doc. 69-1) at 2. Defendants do not dispute Mr. Couch has sufficient expertise to generally qualify as a police procedures expert. (Doc. 69) at 10. Instead, they argue Mr. Couch's testimony is unreliable and "will not assist the trier of fact to understand or correctly determine whether Defendant Officers violated federal law." *Id.* at 2–3. In Response, Plaintiff maintains Mr. Couch's opinions are "sound and based on methodology long accepted by this Court for the expert opinions of police procedures experts, and that Mr. Couch's opinions are relevant and admissible to Plaintiff's municipal and state law causes of action." (Doc. 132) at 2.

Next, Defendants move to exclude the opinions and testimony of Plaintiff's expert, Dr. Kaufman, pursuant to Federal Rules of Civil Procedure 26, 37, and Federal Rules of Evidence 403 and 702. (Doc. 71). Plaintiff offered Dr. Kaufman as a medical expert, stating he will "address issues concerning Plaintiff's injuries, treatment, and future medical care, as it relates to the events and claims at issue in Plaintiff's operative Complaint." (Doc. 71-1) at 3. Defendants argue Dr. Kaufman's testimony is not reliable and lacks sufficient facts and/or data to support his opinions. *See generally id.* In Response, Plaintiff argues Dr. Kaufman's clinical opinions are proper. (Doc. 134) at 8.

II.   Analysis

Federal Rule of Evidence 702 governs the admissibility of expert testimony. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;

      (c) the testimony is the product of reliable principles and methods; and
      (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. From this rule, the Tenth Circuit has developed a gatekeeping test for trial courts to apply in considering the admissibility of proposed expert testimony. First, the court must decide "whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013) (citation omitted). Second, the court "must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact." *Id.* It also must determine whether the testimony is reliable under Rule 702(c) and (d) based on its "principles and methods" and their "application." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).

      In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), the Supreme Court identified four factors trial courts should consider in performing their "gatekeeping" role of determining the reliability of expert testimony: (1) whether the theory used can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) general acceptance in the scientific community. *Id.* at 593–94. "The Supreme Court has emphasized, however, that these four factors are not a 'definitive checklist or test,' and that a court's ... inquiry about reliability 'must be tied to the facts of a particular case.'" *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 2020 WL 1164869, at *3 (D. Kan.) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)). In some cases, "the relevant reliability concerns may focus upon personal knowledge or experience, rather than the *Daubert* factors and scientific foundation." *Id.* (citing *Kuhmo Tire Co.*, 526 U.S. at 150) (internal quotation marks omitted).

3

"For such testimony to satisfy the reliability standard, it 'must be based on actual knowledge, and not mere subjective belief or unsupported speculation.'" *Id.* (citation omitted).

The court is not required to admit opinion evidence that is "connected to existing data only by the *ipse dixit* of the expert," and may exclude the opinion if "there is simply too great an analytical gap between the data and the opinion offered." *Kuhmo Tire Co.*, 526 U.S. at 157 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). But the rejection of expert testimony is the exception rather than the rule, and "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (1993).

"The court has discretion to determine how to perform its gatekeeping function under *Daubert*." *In re EpiPen*, 2020 WL 1164869, at *3 (citing *Bill Barrett Corp. v. YMC Royalty Co., LP*, 918 F.3d 760, 770 (10th Cir. 2019)). The most common method of fulfilling that role is by conducting a *Daubert* hearing, "although such a process is not specifically mandated." *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1087 (10th Cir. 2000). "[T]he district court may satisfy its gatekeeping role without a formal *Daubert* hearing 'so long as the court has sufficient evidence to perform 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Hickcox v. Hyster-Yale Grp., Inc.*, 715 Supp. 3d 1362, 1371 (D. Kan. 2024).

A. *Defendants' Motion to Exclude Mr. Couch*

Defendants contend Mr. Couch's opinions that Defendant Officers violated policies, procedures (SOPs), and best practices are irrelevant, unduly prejudicial to Defendant Officers and will confuse the jury. (Doc. 69) at 16, 18. The Tenth Circuit has held that standard

4

operating procedures and law enforcement standards are irrelevant to the reasonableness inquiry of the Fourth Amendment. *Tanburg v. Sholtis*, 401 F.3d 1151, 1164 (10th Cir. 2005). Further, "SOP requirements viewed in a vacuum are not relevant to the sometimes-split-second decisions officers must make within a totality-of-the-circumstances inquiry." *Buck v. City of Albuquerque*, 2009 WL 4263562, at *3 (D.N.M. Nov. 16, 2009). Thus, the Court determines it is irrelevant whether Defendant Officers violated generally accepted police procedures, and such testimony is excluded.

      Next, Defendants argue Mr. Couch should not be allowed to testify as to whether Defendant Officers use of force, specifically the firing of approximately 17-43 rounds was objectively unreasonable. (Doc. 69) at 5. Defendants have several problems with this area of testimony: that it is not reliable under *Daubert,* and it embraces the ultimate issue of liability. Defendants contend Mr. Couch's opinions and methodology is not based on any manual, book, magazine, training guide, training bulletin or anything published by a law enforcement agency and is therefore, unreliable. (Doc. 69) at 11. In Mr. Couch's deposition, he stated he relied on his "experience, training, and understanding of generally accepted policing practices." (Doc. 69-1) at 6. In addition, he has over twenty years of experience in police training. *See* (Doc. 69-2). Based on this, the Court is of the opinion that Mr. Couch's testimony is exactly the kind of testimony, where formulized *Daubert* factors may not apply. Thus, the Court finds Mr. Couch's knowledge, personal experience, and skill combine to form a reliable basis in the discipline relating to a knowledge of police procedures and its applications.

      Although the Court determines Mr. Couch's testimony is reliable, it nevertheless restricts Mr. Couch from discussing whether Defendant Officers conduct was excessive or objectively unreasonable. For example, Mr. Couch's background and qualifications do not necessarily

5

render his testimony reliable in coming to any conclusions as to whether the officers used excessive force. It is for the jury to determine the reasonableness of Defendant Officers conduct. Mr. Couch may testify regarding types of tools available to officers in a similar situation because such testimony would have a reliable basis, would be helpful to the jury, and is more probative than prejudicial.

Finally, Defendants seek to exclude Mr. Couch's testimony that Defendant Officers used excessive force and that their use of force was objectively unreasonable because it embraces the ultimate issue of liability. (Doc. 69) at 13. Defendants also argue the prejudice of Mr. Couch's testimony substantially outweighs its probative value under Rule 403 in that the jury may take his conclusion as facts instead of realizing it is simply Mr. Couch's own application of the law to the facts.

The Federal Rules of Evidence allow an expert to offer opinion evidence even when it "embraces an ultimate issue to be decided by the trier of fact." Fed. R. Evid. 704(a); *United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005). However, an expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment. *United States v. Simpson*, 7 F. 3d 186, 188–89 (10th Cir. 1993). Expert testimony of this sort is sometimes excluded on the ground that is "usurps the function of the jury in deciding the facts, or interferes with the function of the judge in instructing the jury on the law." *Id.* at 188. This Court determines any testimony regarding whether the officers acted with unreasonable force under the circumstances, whether any specific officer's use of force was excessive or objectively reasonable, or whether the use of force was appropriate under the circumstances usurps the jury's function under Rule 704; is more prejudicial than probative under Rule 403; and renders a

judgment based on an undetermined set of facts, which is for the jury to assess. Accordingly, this evidence will be excluded.

    B. *Defendants' Motion to Exclude Dr. Kaufman*

Dr. Kaufman intends to "opine on [Strickland's] medical care, the nature of his injuries, and the probable life-long problems, complications and outcomes related to his GSW injuries." (Doc. 71-2) at 2. Specifically, that Plaintiff's life will be "wrought with ongoing medical costs, Physical Therapy and early arthritis as well as other musculoskeletal issues related to his devastating injuries." (Doc. 71-2) at 2–3. Dr. Kaufman's opinions stem from review of medical records related to Strickland's care at University Medical Center – El Paso (UMC), AGAPE Pain Management Clinic, Expert Hearing Care, Mountain View Medical Group and his video interview with Strickland. (Doc. 71-2) at 2.

As it relates to medical costs, Dr. Kaufman's testimony does not satisfy Rule 702's reliability requirements. During his deposition, Dr. Kaufman stated he was "not a billing specialist" and that he had no idea what the costs would be." (Doc. 71-5) at 2. Thus, the Court agrees with Defendants that any testimony concerning medical costs would be purely speculative and does not meet Rule 702's requirements.

Dr. Kaufman intends to testify that Plaintiff will need ongoing physical therapy, suffer from: arthritis and other musculoskeletal issues, tinnitus, agoraphobia and PTSD, lead poisoning, post-traumatic antalgic, and lack of productivity and employment. (Doc. 71-2) at 2–3. Being that Dr. Kaufman is not a specialist in physical therapy, audiology, rheumatology, behavioral health therapy, and work productivity post-therapy, and Dr. Kaufman only met with Plaintiff once via video conference, the Court determines it is necessary to limit the extent of Dr. Kaufman's testimony.

To avoid testimony based upon unsupported speculation, Dr. Kaufman's testimony is limited to the face of Plaintiff's medical records and nothing more. For example, Dr. Kaufman may testify that the audiology report shows Plaintiff's ears appear to be working fine, however, he cannot testify that at some unknown time in the future Plaintiff *might* develop tinnitus because he is not an audiologist, nor is there any medical record which suggests he may develop such condition. To the extent Dr. Kaufman intends to opine on speculative future care, he is limited to Plaintiff's medical records and reasonable next steps as a medical doctor and not that of a treating specialist. The Court determines Defendants' opportunity to cross examine Dr. Kaufman is the "appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Thus, the Court will allow Dr. Kaufman to testify as to his opinions based on Plaintiff's medical records and reasonable next steps as a medical doctor and not a treating specialist.

### III.    Conclusion

For the reasons discussed above, the Court grants in part and denies in part Defendants' Motion to Exclude Mr. Couch, (Doc. 69), and Defendants' Motion to Exclude Dr. Kaufman, (Doc. 71).

IT IS SO ORDERED:

(1) Defendants' Motion to Exclude Mr. Couch, (Doc. 69), is granted in part and denied in part. Mr. Couch is permitted to testify as to alternative tools and training available to officers in similar situations. Mr. Couch is prohibited from opining on whether Defendant Officers conduct was excessive or objectively unreasonable.

(2) Defendants' Motion to Exclude Dr. Kaufman, (Doc. 71), is granted in part and denied in part. Dr. Kaufman is permitted to testify as to his opinions based on Plaintiff's

8

medical records and reasonable next steps as a medical doctor.  He is prohibited from testifying as treating specialist.

/s/ KENNETH J. GONZALES[1]<br>CHIEF UNITED STATES DISTRICT JUDGE

---

[1] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.