IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JONATHAN STRICKLAND,

    Plaintiff,

v.                                                     Case No. 23-cv-116 KG/KRS

CITY OF LAS CRUCES, *et al.*,

    Defendants.

MEMORANDUM OPINION AND ORDER

This matter is before the Court on City Defendants' Motion for Partial Summary Judgment No. I: Dismissal of Plaintiff's Fourth Amendment and Fourteenth Amendment Claims Regarding Pursuit Intervention Techniques (Count I), (Doc. 63), filed March 3, 2024. Plaintiff filed his corrected Response, (Doc. 136), on February 6, 2025, and Defendants filed their Reply, (Doc. 142), on February 20, 2025. This matter is also before the Court on City Defendants' Motion for Partial Summary Judgment No. II: Dismissal of Plaintiff's Fourth Amendment and Fourteenth Amendment Claims for Failure to Render Medical Care (Count II), (Doc. 65), filed March 3, 2024. Plaintiff did not file a Response and Defendants filed their Reply, (Doc. 143), on February 20, 2025. Having considered the briefing and relevant case law, the Court grants Defendants' Motions for Partial Summary Judgment Nos. I and II.

    *I.*    *Background*

This case arises out of an incident in which Las Cruces Police Department (LCPD) officers, Joshua Savage, Manuel Frias, Nathan Krause, Daniel Benoit, and Anthony Lucero (Defendant Officers), shot Plaintiff on March 11, 2021. Plaintiff brings claims under Title 42 U.S.C. §§ 1983 and 1988; the Fourth and Fourteenth Amendments to the United States Constitution; and state law claims of battery, assault, intentional infliction of emotional distress,

and negligence. (Doc. 1). Now, Defendants request the Court dismiss Count I of the Complaint as it relates to Defendant Officers use of Pursuit Intervention Techniques (PIT) and Count II for failure to render medical care. (Docs. 63, 65). The Court discusses each in turn.

*A. Defendants' Motion for Partial Summary Judgment No. I*

In the Complaint, Plaintiff alleges Defendant Officers violated his Fourth and Fourteenth Amendment rights by unreasonably seizing Strickland and using excessive force by performing the PIT maneuver. (Doc. 1) at 10–12. In their Motion, Defendants argue "Defendant Officers are entitled to qualified immunity for this claim because their use of force against Strickland was objectively reasonable and, therefore, did not violate his Fourth Amendment rights." (Doc. 63) at 11.[1] Alternatively, Defendants argue they are "entitled to qualified immunity, pursuant to *Wilson*, 52 F.3d 1547, because the law was not clearly established at the time of the incident." *Id.* Additionally, Defendants argue, as a matter of law, Strickland's Fourteenth Amendment substantive due process claim fails and must be dismissed. *Id.* at 19. Finally, Defendants argue Plaintiff's claims against Defendant Officers Krause, Frias, and Lucero as well as those against Officer Does 1 through 25 fails because they were not personally involved in the PIT maneuver and their involvement remains unknown. *Id.* at 23.

In Response, Plaintiff maintains Defendant Officers "acted unconstitutionally in violation of the Fourth Amendment[] protections against unreasonable seizure and the use of excessive force." (Doc. 136) at 3. Plaintiff, however, agrees the appropriate avenue to pursue an excessive force claim is through the Fourth Amendment and not the Fourteenth Amendment. *Id.* at 3 n.2. Plaintiff argues Defendants Krause, Frias, and Lucero engaged in unlawful pursuit techniques

---

[1] Defendants' Motion is limited to claims regarding the PIT maneuver and does not seek dismissal of claims regarding shots fired at Strickland. (Doc. 63) at 2.

and are not entitled to dismissal. *Id.* at 26. Plaintiff, however, is "amendable to dismissing DOE-Defendants at this stage" without prejudice. *Id.*

In Reply, Defendants first argue Plaintiff's Response should not be considered because it continues to violate local rules. (Doc. 142) at 20. Defendants also maintain Defendant Officers are entitled to summary judgment because there is no admissible evidence demonstrating the officers violated Plaintiff's Fourth Amendment rights. *Id.* at 23.

Thus, there are two remaining issues: (1) whether Defendant Officers violated Plaintiff's Fourth Amendment rights when performing the PIT maneuver; and (2) whether Defendant Officers Krause, Lucero, and Frias are entitled to dismissal.

*B. Defendants' Motion for Partial Summary Judgment No. II*

In the Complaint, Plaintiff claims Defendants violated his Fourteenth Amendment right by denying Plaintiff medical care. (Doc. 1) at 12. In Defendants' Motion, they argue Defendant Officers rendered first aid services on the scene and called for an ambulance before Strickland was secured. (Doc. 65) at 2. In Plaintiff's Response to Defendants' Motion No. I, Plaintiff states he "does not oppose Defendants' motion on the Denial of Medical Care claim." (Doc. 136) at 1 n.2. Because Plaintiff explicitly stated he does not oppose the motion and failed to file a response, the Court determines this Motion is unopposed. Thus, the Court grants Defendants' Motion for Partial Summary Judgment No. II, (Doc. 65), and dismisses Count II of Plaintiff's Complaint.

II.   *Undisputed Material Facts*

The facts in this section are either undisputed or stated in light most favorable to the nonmovant, Plaintiff. To the extent proffered facts have been omitted, the Court deems them immaterial to the Motion.

3

Plaintiff drove to the Las Cruces Police Department and parked in front of the station after learning that his then-wife, Brandi Campbell (Brandi), was at the station making a report against him. (Doc. 136-1) at 2, p. 6, Undisputed Material Fact (UMF) 1. Brandi told Las Cruces police officers that Strickland: held her hostage using a handgun, held a gun in her mouth and to her head, threatened to kill her if she went to the police, was involved in a domestic incident the night before, and had attempted to run her car off the road. (Doc. 63-1) at 2–3; (Doc. 136-1) at 2, p. 6, UMF 2.

At approximately 9:04 a.m., about 30 minutes later, Strickland began to leave the police station parking lot. (Doc. 63) at 5, ¶ 1; (Doc. 136) at 9–10, ¶ C, H, UMF 3. Defendant Sgt. Savage directed officers to initiate a felony stop on Strickland. (Doc. 63) at 5, ¶ 2; (Doc. 136) at 10, ¶ I, UMF 4. Following his direction, three police vehicles drove up and stopped in front of Strickland's truck when he was driving out of the police station parking lot. (Doc. 63) at 5, ¶ 3; (Doc. 136) at 11, ¶ J, UMF 5. Defendant Officers engaged their lights and sirens. (Doc. 63) at 6, ¶ 4; (Doc. 136) at 11, ¶ J, UMF 6. Strickland did not stop and instead fled from Defendant Officers in his vehicle. (Doc. 63-2) at 2, ¶ 15–16, UMF 7.[2] Defendant Officers followed Plaintiff and shortly after, Officer Benoit attempted a PIT maneuver. (Doc. 63) at 6, ¶¶ 6–8; (Doc. 136) at 9, ¶ K, UMF 8. Officer Benoit attempted three PIT maneuvers against Strickland's vehicle, successfully bringing Plaintiff's vehicle to a stop on the third attempt. (Doc. 63) at 6–8, ¶¶ 8-13; (Doc. 136) at 11, ¶ L, UMF 9. At the time of the third PIT maneuver, Plaintiff's vehicle was traveling at 45 miles per hour. (Doc. 63) at 7, ¶ 12; (Doc. 136) at 11, ¶ L, UMF 10. Officers

---

[2] Plaintiff states he disputes this fact but fails to provide any argument or evidence that suggests it is disputed. It can also be inferred in Plaintiff's statements of undisputed facts because Defendant Officers would not need to perform a PIT maneuver had Plaintiff stopped his vehicle. *See* (Doc. 136) at 9, ¶ K.

Sgt. Savage and Benoit testified they thought it was safe to perform a PIT maneuver on Plaintiff's vehicle. (Doc. 63-1) at 9, UMF 11. Officer Frias testified that a PIT maneuver performed at over 45 miles per hour is considered deadly force. (Doc. 136-1) at 2, UMF 12.

*III.    Analysis*

Plaintiff brings this action under 42 U.S.C. § 1983, which "allows an injured person to seek damages against an individual who has violated his or her federal rights while acting under color of state law." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 459 (10th Cir. 2013). "Section 1983 creates no substantive civil rights, only a procedural mechanism for enforcing them." *Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194, 205 (2001). "In defending against § 1983 claims like the ones at issue here, an official may plead an affirmative defense of qualified immunity." *Maresca v. Bernalillo Cnty.*, 804 F.3d 1301, 1307 (10th Cir. 2015).

In reviewing a summary judgment motion based on qualified immunity, the court views the evidence "in the light most favorable to the opposing party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam) (citation omitted). "Because of the underlying purposes of qualified immunity, [the Tenth Circuit] review[s] summary judgment orders deciding qualified immunity questions differently from other summary judgment decisions." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff, who must clear two hurdles in order to defeat the defendant's motion." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). That burden requires a plaintiff to show that the state official "(1) [] violated a federal statutory or constitutional right, and (2) the unlawfulness of [the official's] conduct was clearly established at the time." *District of Columbia v. Wesby*, 583 U.S. 48, 62–63 (2018) (internal quotations and citations omitted).

"[The district court] may decide 'which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236, (2009)). "[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d 1123, 1134–35 (10th Cir. 2016) (citing *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014) ("[T]he record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.") (internal quotation marks and citation omitted). In considering whether an officer is entitled to qualified immunity, the district court "considers only the facts that were knowable to the defendant officers." *White v. Pauly*, 580 U.S. 73, 77 (2017) (per curiam). A government official can claim qualified immunity even if the official was mistaken about the facts or the law. *See Pearson*, 555 U.S. at 231.

    A. *Fourth Amendment Violation*

To determine whether Plaintiff's Fourth Amendment rights were violated, the Court must first determine if Defendant Officers PIT maneuver was effectively a seizure. "To state a claim under the Fourth Amendment, Plaintiffs must show both that a 'seizure' occurred and that the seizure was 'unreasonable.'" *Childress v. City of Arapaho*, 210 F. 3d 1154, 1156 (10th Cir. 2000). "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement, through means intentionally applied." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (internal citations omitted). Here, however, Defendants do not dispute whether Defendant Officers conduct constitutes a seizure, therefore the inquiry continues to whether the seizure was unreasonable. (Doc. 63) at 12.

Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395–97 (1989). "In determining the reasonableness of the manner in which a seizure is effected, '[w]e must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" *Scott v. Harris*, 550 U.S. 372, 383 (2007). Among the factors courts should consider in determining whether a police officer applied excessive force are (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

"Deadly force is such force that create[s] a substantial risk of causing death or serious bodily harm." *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1313 (10th Cir. 2009) (citation omitted). The use of deadly force is considered reasonable "only if a reasonable officer in Defendants' position would have had probable cause to believe that there was a threat of *serious physical harm to themselves* or to others." *Id.* (citation omitted).

The Court determines Defendant Officers acted reasonably in performing the PIT maneuver. Plaintiff was a suspected felon based on the information Defendant Officers learned from Brandi, alleging domestic violence and use of firearms. UMF 2. As far as Defendant Officers were concerned, not only did Plaintiff pose a risk to the public by fleeing a traffic stop,

7

but he also posed an immediate threat to Brandi who had just made a police report against Strickland. Defendant Officers were under the impression that Strickland was armed. *Id.* Moreover, Defendant Officers only began trying to perform the PIT maneuver once Strickland would not stop his vehicle and subsequently increased acceleration. UMF 7, 8. Thus, the factors listed above weigh significantly in Defendant Officers' favor.

      Plaintiff argues Defendant Officers executing the PIT maneuver constitutes deadly force. (Doc. 136) at 18. Plaintiff relies on Defendant Frias' testimony in which he opines a PIT maneuver at 45 miles per is considered deadly force. However, Plaintiff confuses Officer Frias' opinion with a legal conclusion. While the Court acknowledges that it might be against guideline procedures, Plaintiff does not point to case law or any law which states performing a PIT maneuver at a speed of 45 miles per hour constitutes deadly force. Plaintiff also confuses the issue in the present motion. *See* (Doc. 136) at 25. Here, we are discussing whether the PIT maneuver alone was reasonable, not whether the PIT maneuver in combination with Defendant Officers shooting was reasonable. While it is true Plaintiff did not try to flee after his vehicle was stopped, it was only after the successful PIT maneuver when Plaintiff ended his own pursuit.

      Even if the Court determined Defendant Officers' PIT maneuver was objectively unreasonable, the Officers are entitled to qualified immunity because performing the PIT maneuver did not violate clearly established law. "For a right to be clearly established there must be Tenth Circuit or Supreme Court precedent close enough on point to make the unlawfulness of the officers' actions apparent." *Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011). It is also worth noting, the Supreme Court has "'never found the use of deadly force in connection with a dangerous car chase to violate the Fourth Amendment, let alone to be a basis for denying qualified immunity' where an officer reasonably believed he or others were in

8

danger." *Johnson v. Peay*, 704 F. Appx. 738, 743 (10th Cir. 2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 15 (2015)).

Plaintiff states "the Defendant Officers testified to being on notice that engaging in a PIT maneuver involving speeds of over 45 mph and with more than two police cars is unconstitutional."  (Doc. 136) at 25.  However, Plaintiff provides no citation for such assertion and has not cited, nor has the Court found, caselaw establishing that an officer may not perform a PIT maneuver to stop a suspected fleeing felon who they reasonably believed was armed.  While Plaintiff argues that there are guidelines for performing PIT maneuvers which Defendant Officers did not follow, this does not equate to a violation of clearly established law.  Accordingly, the Court grants Defendants' Motion for summary judgment on Count I only so far as Plaintiff alleges the PIT maneuver *alone* violated his Fourth Amendment rights.

   B.  *Defendant Officers Krause, Lucero, and Frias*

Because the Court dismisses Count I as it relates to the PIT maneuver as to all Defendant Officers, it does not address Defendants Krause, Lucero, and Frias' involvement in the PIT maneuver.

   IV.   Conclusion

For the reasons discussed above, the Court grants Defendants' Motion for Partial Summary Judgment No. I, (Doc. 63), as it relates to Defendant Officers execution of the PIT maneuver and dismisses Count I only to the extent it alleges the PIT maneuver alone violated Plaintiff's constitutional rights.  The Court also grants Defendants' Motion for Partial Summary Judgment No. II, (Doc. 65), and dismisses Count II.

IT IS SO ORDERED:

(1) Defendants' Motion for Partial Summary Judgment No. I is granted, and Count I is dismissed only to the extent Plaintiff alleges the PIT maneuver alone violated his constitutional rights.

(2) Plaintiff's claims in Count I related to the Fourteenth Amendment are hereby dismissed.

(3) Defendants' Motion for Partial Summary Judgment No. II is granted and Count II is hereby dismissed.

(4) The Doe Defendants are dismissed without prejudice.

/s/ KENNETH J. GONZALES[3]
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.