IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JONATHAN STRICKLAND,

    Plaintiff,

v.                                                   Case No. 23-cv-116 KG/KRS

CITY OF LAS CRUCES, *et al.*,

    Defendants.

MEMORANDUM OPINION AND ORDER

This matter is before the Court on City Defendants' Motion for Partial Summary Judgment No III: Dismissal of Plaintiff's Municipal Liability (Policies, Procedures, Customs, Patterns, and Practices), Failure to Train, Hiring, and Supervisory Liability Claims, (Doc. 67), filed March 3, 2024. Plaintiff filed his corrected Response, (Doc. 137), on February 6, 2025, and Defendants filed their Reply, (Doc. 144), on February 20, 2025. Having considered the briefing and relevant case law, the Court grants Defendants' Motion for Partial Summary Judgment No. III.

    I.    *Background*

This case arises out of an incident in which Las Cruces Police Department (LCPD) officers, Joshua Savage, Manuel Frias, Nathan Krause, Daniel Benoit, and Anthony Lucero (Defendant Officers), shot Plaintiff on March 11, 2021. Plaintiff brings claims under Title 42 U.S.C. §§ 1983 and 1988; the Fourth and Fourteenth Amendments to the United States Constitution; and state law claims of battery, assault, intentional infliction of emotional distress, and negligence. (Doc. 1). Now, Defendants request the Court dismiss Count III of the Complaint alleging the City of Las Cruces (City) had a custom, policy, and/or practices of failing to properly hire, train, supervise, and discipline Defendant Officers. (Doc. 67) at 1–2.

In Defendants' Motion, they argue "there is no evidence that proves that the City's official policy, unwritten customs, patterns or practices, training, hiring, or supervision caused Defendant Officers to use excessive force against Strickland." (Doc. 67) at 2. In Response, Plaintiff offers one paragraph of analysis arguing "Defendants acted unconstitutionally in violation of the Fourth Amendment[] protections against unreasonable seizure and the use of excessive force." (Doc. 137) at 3. Plaintiff also argues there are several disputed material facts and additional material facts which preclude summary judgment. *Id.* at 9. In Reply, Defendants argue Plaintiff "failed to provide any analysis or evidence that proves the City's official policy, unwritten customs, patterns or practices, training, hiring, or supervision caused Defendant Officers to use excessive force against Strickland." (Doc. 144) at 4.

   A. *Undisputed Material Facts*

The facts in this section are either undisputed or stated in light most favorable to the nonmovant, Plaintiff. To the extent proffered facts have been omitted, the Court deems them immaterial to the Motion. Plaintiff disputes in part Defendants' facts 1–19 without providing a "concise statement of the reasons in opposition" as required by D.N.M.LR-Civ. 56.1(b). (Doc. 137) at 3–9. According to Rule 56.1(b), "[e]ach fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed." "All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted." D.N.M.LR-Civ. 56.1. Here, Plaintiff fails to provide any reasons he disputes Defendants' facts 1 through 19, let

2

alone with particularity. Thus, the Court deems Defendants' facts 1–19 undisputed. Plaintiff did not dispute Defendants' facts 20–38.[1]

Prior to and at the time of the March 11, 2012, incident that initiated Strickland's lawsuit, Section 255 Use of Force of the Las Cruces Field Operations Volume 2 was the policy governing LCPD Officers' use of force. (Doc. 67-1) at 1; Undisputed Material Fact (UMF) 1. There is no evidence that shows the City or Defendant Officers had a "custom" of using deadly force in an unjustified manner. (Doc. 67) at 6; UMF 2. There is no evidence which shows the City's use of force policy or customs were deliberately indifferent to Strickland's Fourth Amendment rights against the use of excessive force. (Doc. 67) at 6; UMF 3.

The requirements to become a certified law enforcement officer in New Mexico are set by the Law Enforcement Training Act, specifically NMSA 1978, Section 29-7-6 (1993). (Doc. 67) at 7; UMF 4. The determination of whether a law enforcement applicant has met the requirements is made by the New Mexico Law Enforcement Academy (NMLEA) Board. (Doc. 67) at 7, UMF 5. The Law Enforcement Training Act and the New Mexico Administrative Code establish the curriculum for all basic and advanced law enforcement training and continuing in service training. (Doc. 67) at 7–8; UMF 6. There is no evidence that suggests Defendant Officers failed to successfully complete their NMLEA basic law enforcement academy classes. (Doc. 67) at 7; UMF 7. There is no evidence LCPD failed to train its officers. (Doc. 67) at 8; UMF 8.

---

[1] Plaintiff "reincorporates and realleges herein the statement of disputes and additional material facts set forth in Plaintiff's Response in Opposition to Defendants' Motion for Partial Summary Judgment No. I (Doc. 136)." (Doc. 137) at 9. After reviewing the cited material, the Court finds the statement of facts set forth in Doc. 137 immaterial to the issue at hand because they do not pertain to the City's liability or hiring, training, or supervision policies in any way.

Defendant Officers were provided with use of force training that included instruction on the Fourth Amendment and the Supreme Court of the United States' decision in *Tennessee v. Garner*, 471 U.S. 1 (1985) and *Graham v. Connor*, 490 U.S. 386 (1989). (Doc. 67) at 8 (citing (Doc. 67-2)); UMF 9. Defendant Officers have kept their certification in good standing. (Doc. 67) at 11; UMF 10. At the time of the incident, LCPD followed policies regarding the duties and responsibilities of "Commanding Officers," "Supervisors," and "Officers." (Doc. 67) at 12; UMF 11. Those policies require commanding officers and superior officers to enforce compliance with LCPD policies, procedures, and training. *Id.* at 12 (citing (Doc. 67-3)); UMF 12. At the time of the incident, LCPD followed a policy regarding the way it investigated an LCPD officer's arrest of and use of force against a citizen. Id. at 12–13 (citing (Doc. 67-1), (Doc. 67-4)); UMF 13.

## II.     Legal Standard

### A. Summary Judgment

Summary judgment should be granted if the movant establishes there is no genuine dispute of material fact, and the movant is entitled to judgment as a matter of law. *Sawyers v. Norton*, 962 F.3d 1270, 1282 (10th Cir. 2020); Fed. R. Civ. P. 56(a). A fact is considered material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Id*.

The parties must support factual allegations with evidence and the Court is free to consider materials such as depositions, documents, and affidavits. Fed. R. Civ. P. 56(c)(1)(A). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it

believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the nonmovant is required to put in the record facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 248–52.

In applying this standard, the Court resolves all doubts against the movant, construes all admissible evidence in the light most favorable to the nonmovant, and draws all reasonable inferences in favor of the nonmovant. *See Hunt v. Cromartie*, 526 U.S. 541, 551–52 (1999); *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). That said, the nonmovant still bears the burden to produce real evidence. The nonmoving party cannot rely upon conclusory allegations, contentions of counsel, speculation, suspicion, or conjecture to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988); *GeoMetWatch Corp. v. Behunin*, 38 F.4th 1183, 1200–01 (10th Cir. 2022). A "plaintiff's version of the facts must find support in the record." *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011) (citation omitted). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *GeoMetWatch Corp.*, 38 F.4th at 1200 (quoting *Hasan v. AIG Prop. Cas. Co.*, 935 F.3d 1092, 1098 (10th Cir. 2019)).

B.  Monell Claim

In *Monell v. Dept. of Social Services*, the Supreme Court states, "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." 436 U.S. 658, 691 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. To prove municipal liability under § 1983, the plaintiff must show: (1) a municipality enacted or maintained a policy, (2) the municipality was

deliberately indifferent to the resulting constitutional violations, and (3) the policy caused the underlying constitutional violation. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013); *see also Arnold v. City of Olathe*, 35 F.4th 778, 795 (10th Cir. 2022).

"The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). A court may find that the challenged practice is "an official policy or custom for § 1983 municipal liability purposes if 'it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or a deliberately indifferent training or supervision.'" *Schneider*, 717 F.3d at 770. "A municipality acts with deliberate indifference when it has 'actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation,' and the municipality 'conclusively or deliberately chooses to disregard the risk of harm.'" *Arnold*, 35 F.4th at 795 (citation omitted).

"Notice can be established by proving the existence of a pattern of constitutional violations or, in a narrow range of circumstances, if a 'violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction.'" *Id.* (citation omitted). "A plaintiff can establish a direct causal link by showing that the municipal practice was closely related to the deprivation of rights." *Id.* "To do so, the plaintiff must prove that the municipality was the 'moving force' behind that alleged injury." *Id.* (citation omitted). "We must rigorously scrutinize the causation element when the municipal policy is not itself unconstitutional to ensure that the municipality is not held liable solely for its employees' actions." *Id.* "The fact that a municipal 'policy' might lead to 'police misconduct' is hardly

6

sufficient to satisfy *Monell*'s requirement that the particular policy be the moving force behind a constitutional violation." *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985).

  III.  Discussion

  In Plaintiff's one-paragraph analysis, he argues the City violated *Monell* by ratifying Defendant Officers' violations because they were not disciplined for their conduct. (Doc. 137) at 9–10. Plaintiff, however, does not offer any facts or evidence that supports such assertion. Even looking at the facts Plaintiff reincorporated from his previous response, (Doc. 136) at 7–13, there are none supporting Plaintiff's proposition that the City ratified or did not discipline Defendant Officers.

  Plaintiff cites *Jiron v. City of Lakewood*, which provides "[a] plaintiff suing a municipality under § 1983 for the actions of one of its officers must prove: (1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." 392 F.3d 410, 419 (10th Cir. 2004). He also cites *Bryson v. City of Oklahoma City*, which states a municipal policy or custom may take the form of "the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval." 627 F. 784, 788 (10th Cir. 2010) (citation and quotations omitted).

  But, again, Plaintiff fails to provide any evidence supporting his argument. Plaintiff does not: (1) provide any deposition testimony evidence where an officer states he was not disciplined; (2) state which policy or custom led to the constitutional violation; and (3) indicate a final policymaker who ratified Defendant Officers' decisions. Meanwhile, Defendant proffers facts which do not establish there was a custom to use excessive force or a custom to improperly hire, train, and supervise LCPD officers. Because Plaintiff did not carry his burden in proving

the necessary elements to establish municipal liability, the Court dismisses his claims relating to municipal liability for unconstitutional custom or policy.[2]

From Plaintiff's Complaint, it is unclear whether Plaintiff intended to bring claims for failure to properly hire, train, and supervise LCPD officers. (Doc. 1) at 14–16. Based on the Court's reading of Count III, it appears Plaintiff argues not that there are claims of negligent hiring, and failure to train and supervise, but rather the City has a custom of improperly hiring, training, and supervising their employees. *Id.* To the extent the Complaint alleges these claims, Defendants argue they should be dismissed. (Doc. 67). Plaintiff does not argue or offer any reason why the Court should not grant Defendants' Motion as it relates to Plaintiff's failure to properly hire, train, and supervise claims. *See generally* (Doc. 137). "Failure to respond to an argument is generally deemed an acquiescence." *Mulford v. Altria Group, Inc.*, 242 F.R.D. 615, 622 n.5 (D.N.M. 2007); *see also* D.N.M.LR-Civ. 7.1(b) ("The failure of a party to file and serve a response in opposition to a motion…constitutes consent to grant the motion."); *Butchard v. Cnty. of Doña Ana*, 287 F.R.D. 666, 671 (D.N.M. 2012). Thus, the Court determines that because Plaintiff fails to respond to Defendants' arguments regarding improper hiring, training, and supervising, Plaintiff acquiesces to dismissing these claims.

IV.     *Conclusion*

For the reasons discussed above, the Court grants Defendants' Motion, (Doc. 67), and dismisses Count III of Plaintiff's Complaint. Because the Court dismisses Count III of the Complaint, Defendants' Motion to Bifurcate, (Doc. 68), is now moot.

---

[2] Without providing a meaningful argument or any evidence to supporting his claim, the Court wonders whether Plaintiff understands his burden at the summary judgment stage.

IT IS SO ORDERED.

/s/ KENNETH J. GONZALES[3]
CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.