# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**JONATHAN STRICKLAND, an individual,**

     Plaintiff,

v.    Case No. CIV-23-00116 KG/KRS

**CITY OF LAS CRUCES, a municipal
entity; JOSHUA SAVAGE, individually and
in his official capacity as a sergeant for the
Las Cruces Police Department, MANUEL
FRIAS, individually and in his official
capacity as a police officer for the Las
Cruces Police Department; NATHAN
KRAUSE, individually and in his official
capacity as a police officer for the Las
Cruces Police Department; DANIEL
BENOIT, individually and in his official
capacity as a police officer for the Las
Cruces Police Department; ANTHONY
LUCERO, individually and in his official
capacity as a police officer for the Las
Cruces Police Department; and DOES 1-50,
inclusive, individually and in their official
capacity as police officers for the Las Cruces
Police Department,**

     Defendants.

## PRETRIAL ORDER

This matter is before the Court pursuant to Fed. R. Civ. P. 16.  The parties conferred and

submit the following Pretrial Order.

## I.  APPEARANCES

Attorneys who will try this action:

For Plaintiff(s)                    DeWitt M. Lacy, Esq. (SBN 258789)
                                    Julia Quesada, Esq. (SBN 337872)
                                    **Burris, Nisenbaum, Curry, & Lacy LLP**
                                    DeWITT M. LACY, Esq.
                                    JULIA N. QUESADA, Esq.
                                    9701 Wilshire Blvd., Suite 1000
                                    Beverly Hills, California 90212
                                    Telephone: (310) 601-7070
                                    Facsimile: (844) 273-6873
                                    dewitt@bncllaw.com
                                    julia.quesada@bncllaw.com

For Defendant(s)                    Luis Robles
                                    Samuel C. DeFillippo
                                    Robles, Rael & Anaya, P.C.
                                    500 Marquette Ave, NW, Suite 700
                                    Albuquerque, New Mexico 87102
                                    (505) 242-2228
                                    (505) 242-1116 (facsimile)
                                    luis@roblesrael.com
                                    chris@roblesrael.com

## II.  JURISDICTION AND RELIEF SOUGHT

**A.    Subject Matter Jurisdiction.**

**1.    Was this action removed or transferred from another forum?** __ Yes _X_ No

If yes, was the action removed or transferred?

_____ Removed        _____ Transferred _____ Original forum

**2.    Is subject matter jurisdiction of this Court contested?**

___X___ Uncontested        _____ Contested  _____ Party contesting

**3.    Asserted basis for jurisdiction.**

___X___ Federal Question _____ Diversity  _____ Other

Statutory Provision(s) Invoked:  ___42 U.S.C. § 1983 and 28 U.S.C. §1367

**B.**     **Personal Jurisdiction and Venue.**

    **1.**     **Is personal jurisdiction contested?**

       __X__ Uncontested_____ Contested

    Identify the party contesting personal jurisdiction and basis for objection:

    _____

    **2.**     **Is venue contested?**

       __X__ Uncontested      _____ Contested _____ Party Contesting

    Identify the party contesting personal jurisdiction and basis for objection:

    _____

**C.**     **Are the proper parties before the Court?**

       __X__ Uncontested_____ Contested

    If contested, identify each missing party or improper party and the basis for contention:

    _____

**D.**     **Identify the affirmative relief sought in this action.**

    **1.**     Plaintiff seeks:

        a.     For general damages in a sum according to proof;

        b.     For special damages in a sum according to proof;

        c.     For punitive damages in a sum according to proof as to Defendants SAVAGE, FRIAS, KRAUSE, BENOIT, LUCERO, and DOES 1-25;

        d.     For reasonable attorneys' fees pursuant to 42 U.S.C. Section 1988;

        e.     For any and all statutory damages allowed by law;

        f.     For cost of suit herein incurred; and

g.      For such other and further relief as the Court deems just and proper.

2.      Defendant seeks: Judgment in favor of Defendant and dismissal of Plaintiff's claims.

### III.   BRIEF DESCRIPTION OF NATURE OF CLAIMS/DEFENSES

**A.      Plaintiff's claims:**

**Plaintiff Jonathan Strickland plans to pursue the following claims against Defendants:**

Claim 1:    Excessive force (42 U.S.C. § 1983) claim against defendant police officers Joshua Savage, Manual Frias, Nathan Krause, Anthony Lucero, and Daniel Benoit;

Claim 2:    Battery claim against defendant police officers Joshua Savage, Manual Frias, Nathan Krause, Anthony Lucero, and Daniel Benoit.

**The elements required to establish Plaintiff's claims are:**

In addition to other pertinent instructions on the operative law as may be proffered to the Court by one or more of the parties, the following are the essential elements for proving Plaintiff's operative claims by a preponderance of the evidence:

2)  [Unreasonable Use of Force.]  During the incident at issue, did the involved City defendant peace officers (SAVAGE, FRIAS, KRAUSE, LUCERO, and/or BENOIT) use force upon Plaintiff (STRICKLAND) that was objectively unreasonable from the perspective of a reasonable peace officer under the totality of the circumstances, in compliance with applicable constitutional law regarding police seizures and reasonable use of force? (Plaintiff's Excessive

Force claim pursuant to 42 U.S.C. § 1983, and New Mexico state law battery

claim).

3) [Battery] During the incident the defendant peace officer's (SAVAGE, FRIAS, KRAUSE, LUCERO, and/or BENOIT) conduct constitute an unwanted touching of Plaintiff (STRICKLAND)?

**B.      Defendant's defenses:**  *(A defendant claiming entitlement to qualified immunity must set forth with specificity the basis of the defense.)*

On March 10, 2021, at 9:33 am, Brandi Campbell ("Ms. Campbell") called 911. Ms. Campbell reported that she was driving and that her husband, Jonathan Strickland ("Mr. Strickland"), was following her. Ms. Campbell reported to 911 that Mr. Strickland was driving an orange Toyota Tacoma and that Mr. Strickland was trying to break her mirrors off her car and was bumping his car into hers as they drove. The dispatcher could hear Mr. Strickland yelling at Ms. Campbell over the phone. Once Mr. Strickland realized that Ms. Campbell had called 911, Mr. Strickland left the scene. Officers spoke with Ms. Campbell but did not contact Mr. Strickland.

On March 11, 2021, at approximately 7:30 am, Ms. Campbell went to the Las Cruces Police Department ("LCPD") station. The station was closed, so Ms. Campbell called 911 from a land line at the police station entrance. Ms. Campbell reported that Mr. Strickland put a loaded gun to Ms. Campbell's head and that Mr. Strickland broke Ms. Campbell's phone so that she could not call the police. Ms. Strickland told the dispatcher that she was afraid for her life, and she did not want Mr. Strickland to take their son. Dispatch relayed all of this to officers over the radio and on the CAD.

Officer Jorge Arroyo-Jaime ("Officer Arroyo-Jaime") met with Ms. Campbell at the police station. Ms. Campbell told Officer Arroyo-Jaime that on March 10, 2021 she arrived at home around 2:00 pm. Mr. Strickland and their son were already home when Ms. Campbell arrived. Mr. Strickland was packing up his and their son's belongings. Mr. Strickland told Ms. Campbell that he was taking their son back to Cincinnati, Ohio. Ms. Campbell told Mr. Strickland that she understood if he wanted space.

Mr. Strickland became upset with Ms. Campbell for accepting that Mr. Strickland wanted to leave. Mr. Strickland took Ms. Campbell's phone and keys from her. Mr. Strickland told Ms. Campbell that he had been looking up how long he could go to jail for killing someone and that it was not that bad. Mr. Strickland then retrieved a loaded gun from his bedroom and told the couple's one and half year-old son that, "Mommy's going to die today." After which, Mr. Strickland put the gun to Ms. Campbell's head and told her to take their son to his bedroom and lock the door. Mr. Strickland then pushed Ms. Campbell into their bedroom. Mr. Strickland cocked the gun, but then removed the bullets from it. Mr. Strickland slapped and hit Ms. Campbell. Mr. Strickland

eventually fell asleep around 5:00 pm, but woke up around midnight. When Mr. Strickland woke up, he continued yelling at and hitting Ms. Campbell.

Later, around 7:00 am on March 11, 2021, Ms. Campbell got ready to go to work and to take her son to daycare. Mr. Strickland took Ms. Campbell's phone and smashed it. Ms. Campbell took her son to daycare but told Officer Arroyo-Jaime that she did not know if her son was safe at the daycare. Ms. Campbell told Officer Arroyo-Jaime that Mr. Strickland warned her that if she called the police or if they came to the house, that Mr. Strickland would shoot them. Mr. Strickland said, "it was gonna be a shootout." Ms. Campbell informed Officer Arroyo-Jaime that there were three guns in the house (a 9mm, a shotgun, and a rifle), but that only one of them was in Mr. Strickland's name.

At approximately 8:23 am, officers obtained a photograph of Mr. Strickland. Officers thought that Mr. Strickland may be in his apartment. Officers also knew that Mr. Strickland had an orange Toyota pickup with an Ohio license plate. Officer Arroyo-Jaime advised officers searching for Mr. Strickland that Mr. Strickland had access to three firearms, that Mr. Strickland had made threats against law enforcement, and that Mr. Strickland "would shoot it out if contacted."

At 8:27 am, officers learned that Mr. Strickland was "mobile in the orange pickup truck." Officers did not immediately attempt to apprehend Mr. Strickland, instead choosing to surveil him. Officers were concerned that Mr. Strickland may go to his son's daycare and decided to "stay with that child and if we need to lock it down—if he heads that way, lock it down."

At 8:32 am, Mr. Strickland pulled into a store parking lot. Mr. Strickland went into the store for approximately four minutes. While Mr. Strickland was in the store, officers discussed their preparations for detaining him. Sergeant Joshua Savage ("Sgt. Savage"), tactical commander of the incident, said to the officers' goal was to locate Mr. Strickland to "detain, and detain only." Sgt, Savage stated to officers, "We're gonna move in and detain him. Let's get some resources in the area. Let's get these cameras handed out. We'll keep eyes on. Once everything is set in place and safe, we'll move in. We're gonna do a felony stop the best we can."

At 8:36 am, Mr. Strickland exited the store, reentered his truck, and drove out of the parking lot. Officers discussed over the radio that Mr. Strickland had access to "a couple handguns and a long gun." One of the officers that was following Mr. Strickland said that he was "moving pretty fast."

At 8:41 am, Mr. Strickland pulled into the police station parking lot and parked next to Ms. Campbell's car, facing the police station. Sgt. Savage requested that officers in the police station secure Ms. Campbell. Sgt. Savage decided not to approach Mr. Strickland until officers could place themselves between Mr. Strickland and his truck. Several officers gathered in the police station lobby and in a police station parking lot, out of Mr. Strickland's sight. The officers coordinated less lethal and lethal coverage on Mr. Strickland. Officers in the police station lobby

discussed that Mr. Strickland had access to firearms and that he had threatened to "shoot it out" with officers.

An officer observing Mr. Strickland from his patrol unit said that he could not see into Mr. Strickland's truck because Mr. Strickland's truck had a dark tint. While Mr. Strickland sat in the parking lot and officers prepared to respond to him, civilians continued to go to the police station. Officers secured all civilians that entered the police station in the police station courtyard. However, other civilians remained sitting in their vehicles in the police station parking lot.

Sgt. Savage and Sergeant Horacio Rivera ("Sgt. Rivera") decided to advise the fire department, which was next door, and the library, which was across the street, to shelter in place. Sgt. Rivera asked dispatch to have an ambulance on standby on a nearby street. Sgt. Rivera also authorized blocking off all traffic in front of the police station. Lt. Story and Sgt. Savage decided to bring in SWAT and use a BearCat as cover to approach Mr. Strickland. Sgt. Savage also directed Sergeant Adrian Alva ("Sgt. Alva") and Officer Francis Whitten ("Officer Whitten") to take position on the roof of the fire department, which was next door. Sgt. Savage, K9 Officer Anthony Lucero ("Officer Lucero"), Officer Manuel Frias ("Officer Frias"), and Officer Daniel Benoit ("Officer Benoit") staged out of Mr. Strickland's view in a turn lane on North Main Street at the intersection of North Main Street and East Picacho Avenue. Officer Nathan Krause blocked westbound traffic at East Picacho Avenue and North Campo Street.

At 9:04 am, Mr. Strickland left the police station. Sgt. Savage directed officers to initiate a felony stop on Mr. Strickland. Mr. Strickland briefly stopped his truck in the police station driveway. Three police units, with their emergency lights activated, drove up and stopped in front of Mr. Strickland's truck, but Mr. Strickland fled from the officers, swerving to avoid them. Mr. Strickland traveled west on East Picacho Avenue before turning south onto North San Pedro Street. Officer Benoit, Sgt. Savage, Officer Krause, Officer Frias, and Officer Lucero pursued Mr. Strickland.

During their pursuit, Sgt. Savage ordered officers to "PIT him." Officer Benoit attempted multiple PIT maneuvers against Mr. Strickland. There was no other traffic or pedestrians in the area at the time. Mr. Strickland swerved all over the road to evade Officer Benoit's PIT maneuvers. Officer Benoit's first PIT maneuver, near the intersection of North San Pedro Street and East Lucero Avenue, failed to stop Mr. Strickland. Mr. Strickland then turned east onto East Hadley Avenue. As Mr. Strickland was turning, Officer Benoit attempted a second PIT maneuver. Mr. Strickland continued driving east on East Hadley Avenue. Mr. Strickland began to turn south onto North Campo Street. At 9:05 am, Officer Benoit attempted a third PIT maneuver which successfully brought Mr. Strickland's truck to a stop but caused Officer Benoit to crash into a wall.

Seconds after Officer Benoit's PIT maneuver, at 9:05:34 am, Sgt. Savage stopped his patrol unit directly in front of Mr. Strickland's truck so that they were "nose-to-nose." In that moment, Sgt. Savage knew the following: Mr. Strickland had attempted to run Ms. Campbell off the road, Mr. Strickland held Ms. Campbell against her will, Mr. Strickland prevented Ms. Campbell from calling the police, Mr. Strickland put a gun in Ms. Campbell's mouth, Mr. Strickland had access

to two (2) handguns and three (1) rifle, Mr. Strickland made threats that he would shoot police if they tried to contact him, Mr. Strickland had gone to the police station, and Mr. Strickland fled from officers through a residential area.

Sgt. Savage observed Mr. Strickland put his hands together and raise them over the steering wheel and point "what looked like a gun" at Sgt. Savage. Sgt. Savage knew that "the only choice he has at that moment to save his own life was to start shooting at Jonathan Strickland." At 9:05:36 am, using his department issued AR-15, Sgt. Savage was the first to shoot at Mr. Strickland. To protect himself from the deadly threat posed by Mr. Strickland, Sgt. Savage fired though his windshield at the windshield of Mr. Strickland's truck.

While Sgt. Savage was shooting his AR-15, Officer Krause stopped his patrol unit in front of Mr. Strickland's truck, and to the left of Sgt. Savage's patrol unit. In that moment, Officer Krause knew the following: Mr. Strickland was involved in a domestic violence incident with Ms. Campbell, Mr. Strickland rammed his truck into Ms. Campbell's car, Mr. Strickland put a gun in Ms. Campbell's mouth and threatened to kill her, Mr. Strickland waited for Ms. Campbell outside the police station, Mr. Strickland had two (2) handguns and one (1) rifle, Mr. Strickland made threats to "shoot it out with police should they try to make contact with him," and Mr. Strickland fled from officers.

Officer Krause observed Mr. Strickland "make a motion of holding a handgun coming up over the steering wheel and then heard gunshots being fired." Officer Krause thought that Mr. Strickland was shooting at Sgt. Savage. At 9:05:40 am, Officer Krause exited his patrol unit and, while standing behind his open driver's side door, used his department issued pistol to shoot at the front passenger window and door of Mr. Strickland's truck to end the deadly threat posed by Mr. Strickland.

When Officer Frias arrived, he parked his patrol unit slightly behind Sgt. Savage's and Officer Krause's patrol units. In that moment, Officer Frias knew the following: Mr. Strickland was involved in a serious domestic violence incident that occurred the prior night, Mr. Strickland placed a gun in a woman's mouth and threatened to kill her, the woman said that Mr. Strickland would "shoot it out with police officers if they tried to make contact with him," Mr. Strickland had multiple handguns and possibly a rifle, Mr. Strickland went to the police station and parked next to his victim's car, and Mr. Strickland fled from officers.

While Sgt. Savage was shooting at Mr. Strickland's truck, Officer Frias exited his patrol unit and ran to stand beside the driver's side door of Sgt. Savage's patrol unit. As he ran, Officer Frias drew his department issued pistol. Officer Frias "observed numerous holes in the front of Sgt. Savage's windshield and continued to hear gunfire." Officer Frias "assumed the suspect was shooting at Sgt. Savage and the other officers and therefore he engaged and started shooting at the suspect's vehicle." At 9:05:41 am, Officer Frias began shooting at the windshield of Mr. Strickland's truck to stop the deadly threat posed by Mr. Strickland.

Officer Lucero was the last officer involved in the shooting to arrive on scene. Officer Lucero parked his patrol unit slightly behind and to the right of Sgt. Savage's patrol unit. In that moment, Officer Lucero knew the following: Mr. Strickland was involved in a domestic violence incident the prior night, Mr. Strickland placed a gun in Ms. Campbell's mouth and threatened to kill her, Mr. Strickland had access to two (2) handguns and one (1) rifle, Mr. Strickland went to the police station and parked next to Ms. Campbell's car, and Mr. Strickland fled from officers through a residential area.

Sgt. Savage, Officer Frias, and Officer Krause were already shooting at Mr. Strickland's truck when Officer Lucero exited his patrol unit. As Officer Lucero exited his patrol unit, he drew his department issued pistol. Officer Lucero could see Mr. Strickland's hands and arms on top of his steering wheel, but the tint was so dark that he could not see anything else.

Officer Lucero ran to the passenger side of Sgt. Savage's patrol unit. Officer Lucero heard gunshots and could see holes in Sgt. Savage's windshield. Given what he saw, Officer Lucero believed that Mr. Strickland was shooting at Sgt. Savage. Officer Lucero felt glass hit his face and thought that he was going to be shot as well.

At 9:05:46 am, Sgt. Savage exited his patrol unit, leaving his AR-15 behind. Sgt. Savage's patrol unit rolled forward slowly, pushing Mr. Strickland's truck backwards a few feet. Sgt. Savage saw the distance between his patrol unit and Mr. Strickland's truck close and realized that Mr. Strickland was still inside, still armed, and was trying to escape. Therefore, Sgt. Savage believed that Mr. Strickland still posed a deadly threat and drew his department issued pistol and shot at the windshield of Mr. Strickland's truck.

At 9:05:46, after Officer Frias yelled that he was reloading, Officer Lucero began shooting at the windshield of Mr. Strickland's truck to stop the deadly threat he posed. Officer Lucero slowly walked alongside Sgt. Savage's patrol unit, keeping the windshield of Mr. Strickland's truck within his view.

Sgt. Savage called for all responding officers to hold their fire. All officers obeyed Sgt. Savage's command to hold their fire. While Sgt. Savage was ordering officers to hold their fire, Officer Benoit, who had crashed through a fence, managed to exit his patrol unit and climb on top of it. Officer Benoit stayed on his patrol unit's roof and provided lethal cover while the other officers planned how to detain Mr. Strickland. Officer Lucero warned that Mr. Strickland's truck was still moving. Sgt. Savage called into dispatch, reporting that there were "several shots fired" and requested the BearCat to help them clear Mr. Strickland's truck. Officer Frias warned that he could still hear Mr. Strickland inside his truck. Officer Lucero ran back to his patrol unit to retrieve his police service dog, K9 Jax, in case they were needed to assist with apprehending Mr. Strickland. The other officers took cover behind Sgt. Savage's patrol unit and ordered Mr. Strickland to step out and show his hands. Officer Benoit observed that Mr. Strickland was showing his hands and ordered Mr. Strickland to exit his truck.

Mr. Strickland exited his truck, falling to the ground. Mr. Strickland laid on his stomach, facing away from the officers. Officer Krause ordered Mr. Strickland to crawl towards him. Mr. Strickland yelled back that he could not move his right leg. Officer Krause ordered Mr. Strickland to put his hands to the sides, and Mr. Strickland obeyed.

Officer Lucero stood by, keeping K9 Jax restrained on a leash while K9 Jax barked and lunged at Mr. Strickland. At 9:07:03, an officer called for an ambulance. Seconds later, officers cautiously approached Mr. Strickland. Officer Sergio Mendez ("Officer Mendez") handcuffed Mr. Strickland at 9:07:20 am. While Officer Mendez handcuffed Mr. Strickland, Officer Krause confirmed with Sgt. Savage that an ambulance was coming. After handcuffing Mr. Strickland, Officer Mendez noticed a large bulge in Mr. Strickland's left front pocket. Officer Mendez removed the item from Mr. Strickland's pocket and saw that it was a wallet. Officer Mendez checked Mr. Strickland's other pocket and waistband for weapons and found none.

While Officer Mendez was searching Mr. Strickland, another officer called for a medpack. Simultaneously, Sgt. Savage called for an ambulance. One minute after Officer Mendez handcuffed Mr. Strickland, Officer Jonathan Rivera brought a medpack to Mr. Strickland's side. Officer Lazaro Palos ("Officer Palos") cut off Mr. Strickland's shirt and pants, looking for gunshot wounds. Officer Palos found gunshot wounds on Mr. Strickland's upper back, lower back, and right buttock.

Officer Palos placed a chest seal on Mr. Strickland's upper back. Officer Krause placed a chest seal on Mr. Strickland's lower back. Officer Palos helped Officer Daniel Rodriguez ("Officer Rodriguez"), a SWAT medic, pack the wound on Mr. Strickland's right buttock, which was bleeding profusely. Then, Officer Palos and Officer Rodriguez wrapped an Israeli bandage around Mr. Strickland's right leg and hip, applying as much pressure as possible. While providing first aid, the officers tried to keep Mr. Strickland alert, asking him to talk to them. While officers were providing first aid to Mr. Strickland, paramedics arrived. The officers continued to provide first aid to Mr. Strickland while the paramedics brought a stretcher to Mr. Strickland. An ambulance transported Mr. Strickland to Memorial Hospital.

## IV. FACTUAL CONTENTIONS UNDERLYING CLAIMS/DEFENSES

### A.    Stipulated Factual Contentions.

The parties agree to the following facts listed separately below:

1.      Plaintiff Jonathan Strickland is an individual and former resident of Las Cruces, New Mexico.

2.    At all material times, defendant police officers Joshua Savage, Manual Frias, Nathan Krause, Anthony Lucero, and Daniel Benoit were acting under color of state law and within the scope of their employment with the State of New Mexico.

**B.    Contested Material Facts.**

1.    Plaintiff's Contentions:

In view of the admitted facts and the elements required to establish the claims and affirmative defenses, the following issues of material fact remain to be tried: whether any defendant officer used excessive force on Plaintiff Jonathan Strickland in violation of his Fourth Amendment rights under the United States Constitution; whether any defendant officer committed a battery against Plaintiff Jonathan Strickland in violation of New Mexico state law; and the nature and extent of Plaintiff's damages.

2.    Defendant's Contentions:

Defendants deny Strickland's factual contentions.  Specifically, Defendants deny that Defendant Officers' actions violated Strickland's constitutional rights or committed any torts. More specifically, Defendant Officers deny that they used excessive force against Strickland. Further, Defendants deny that they violated Strickland's Fourth Amendment rights or committed the state law battery claim. See Section III, B (Defendant's defenses)

## V.  APPLICABLE LAW

**A.    Do the parties agree which law controls the action?**

___X___ Yes    _____ No

**If yes, identify the applicable law:**  The parties agree that 42 U.S.C. § 1983 is the applicable federal law and that New Mexico battery law is the applicable state law.

If no, identify the dispute and set forth each party's position regarding the applicable law.

    1.     Plaintiff: N/A

    2.     Defendant: N/A

## VI.  CONTESTED ISSUES OF LAW

**Identify the specific issues of law which are contested.**

    1.     Plaintiff

        a.  Whether the City defendant peace officers Joshua Savage, Manual Frias, Nathan Krause, Anthony Lucero, and Daniel Benoit used force upon Plaintiff Jonathan Strickland that was objectively unreasonable from the perspective of a reasonable peace officer under the totality of the circumstances, in compliance with applicable constitutional law regarding police seizures and reasonable use of force.

        b.  Whether the conduct of City Defendant peace officers Joshua Savage, Manuel Frias, Nathan Krause, Anthony Lucero, and Daniel Benoit constituted an unwanted touching of Plaintiff Jonathan Strickland.

        c.  Whether Plaintiff Jonathan Strickland is entitled to recover damages for his injuries.

    2.     Defendants

        a.    Whether defendant police officers Joshua Savage, Manual Frias, Nathan Krause, Anthony Lucero, and Daniel Benoit violated the clearly established Fourth Amendment law against the use of excessive force, entitling them to the affirmative defense of qualified immunity.

b.    Whether defendant police officers Joshua Savage, Manual Frias, Nathan Krause, Anthony Lucero, and Daniel Benoit were privileged to commit a state law battery against Strickland.

## VII.  MOTIONS

A.    **Pending Motions (indicate the date filed):**

**Plaintiff:**

1.    Plaintiff's Motion in Limine No. 1: For an Order Excluding Evidence of Plaintiff's Medical Records from St. Elizabeth Healthcare [Doc. 185], filed on June 10, 2025;

2.    Plaintiff's Motion in Limine No. 2: To Exclude Evidence of Plaintiff's 2016 Involuntary Psychiatric Hold [Doc. 186], filed on June 10, 2025;

3.    Plaintiff's Motion in Limine No. 3: To Exclude Evidence of Speculative Psychological Disorders and Diagnoses [Doc. 187], filed on June 10, 2025;

4.    Plaintiff's Motion in Limine No. 5: To Exclude Evidence of Plaintiff's Prior Bad Acts and Criminal History [Doc. 188], filed on June 10, 2025;

5.    Plaintiff's Motion in Limine No. 6: To Exclude Evidence of Prior Suicidal Ideation or Attempts [Doc. 189], filed on June 10, 2025; and

6.    Declaration of Julia N. Quesada in Support of Plaintiff's Motion in Limine Nos. 2, 3, 5, and 6 [Doc. 190], filed on June 10, 2025.

**Defendants:**

1.    Defendant Officers' Motion in Limine No. I: The Exclusion of Evidence at Trial Regarding Defendant and Witness Officers' Use of Force in Prior and Subsequent, Unrelated Incidents [Doc. 176], filed on June 8, 2025;

2.    Defendant Officers' Motion in Limine No. II: The Exclusion of Evidence at Trial Regarding Police Standard Operating Procedures, Training, and Less Intrusive Alternatives [Doc. 177], filed on June 8, 2025;

3.    Defendant Officers' Motion in Limine No. III: Barring Any Reference to the Providence, Rhode Island Hiring Scandal or Attempt to Suggest

Defendant Officers' Expert Jack Ryan was Involved in Such Scandal [Doc. 178], filed on June 8, 2025;

4.    Defendant Officers' Motion in Limine No. IV: Seeking the Admission of Strickland's Criminal Conviction into Evidence at Trial [Doc. 179], filed on June 8, 2025;

5.    Defendant Officers' Motion in Limine No. V: Admissibility of Evidence Regarding the Events that Preceded the Officer Involved Shooting of Jonathan Strickland [Doc. 180], filed on June 8, 2025;

6.    Defendant Officers' Motion in Limine No. VI: Admissibility of Strickland's Mental Health History, Suicidal Ideation, Alcohol Use, and Criminal Misconduct [Doc. 181], filed on June 8, 2025; and

7.    Defendant Officers' Motion in Limine No. VII: Admission of Strickland's Videotaped Statement [ Doc. 183], filed on June 8, 2025.

No other motions *in limine* are pending or contemplated. The parties met and conferred on all pending motions *in limine*, in accordance with the Court's Order of June 13, 2025 [Doc. No. 194].

**B.**    **Motions which may be filed:**

**Plaintiff:** None at this time.

**Defendant:**  None at this time

Briefing must be complete and filed with the Court by _____.

## VIII.  DISCOVERY

**A.**    **Has discovery been completed?**  __X__ Yes _____ No

**B.**    **Are there any discovery matters of which the Court should be aware?**

No.

## IX.  ANTICIPATED WITNESSES

*Each party is under a continuing duty to supplement this list and the description of anticipated testimony. This does not, however, apply to a rebuttal witness. Indicate if the witness*

*will testify in person or by deposition and include a brief description of the anticipated testimony. If the testimony is by deposition, identify the deposition by page number and line number. A witness who has not been identified and whose testimony has not been disclosed may not testify at trial unless good cause is shown.*

A.    **Plaintiff's Witnesses:**

1.    Plaintiff will call or have available at trial the following witnesses:

      1. Jonathan Strickland

      2. Joshua Savage

      3. Manuel Frias

      4. Nathan Krause

      5. Anthony Lucero

      6. Daniel Benoit

      7. Jeff Avalos

      8. Mike Leftault

      9. Kassidee Plumley

      10. Amanda Baker

      11. Gil Mora

      12. NMSP Inv. Bureau Agent Clint Norris

      13. Felipe Gonzalez

      14. Noah Kaufman, MD

      15. Kelly Couch

      16. Any witnesses necessary for rebuttal but not previously anticipated.

2.    Plaintiff may call the following witnesses:

**B.    Defendant's Witnesses:**

1.    Defendant will call or have available at trial the following witnesses:

    1.    LCPD Officer Nathan Krause;

    2.    LCPD Lieutenant Joshua Savage;

    3.    LCPD Officer Manuel Frias;

    4.    LCPD Officer Anthony Lucero; and

    5.    LCPD Officer Daniel Benoit.

2.    Defendant may call the following witnesses:

    1.    LCPD Officer Michael Leftault (L852);

    2.    LCPD Officer Mark Dominguez (L677);

    3.    LCPD Sergeant Horacio Rivera (L701);

    4.    LCPD Officer Lazaro Palos (L867);

    5.    LCPD Officer Daniel Lopez (L681);

    6.    LCPD Officer Jorge Arroyo-Jaime (L965);

    7.    LCPD Evidence Technician Norma Ibarra (L072);

    8.    LCPD Detective Ricky Bardwell (L722);

    9.    LCPD Detective Rene Molenda (L611);

    10.    NMSP Agent Norman Rhoades;

    11.    NMSP Agent Ray James;

    12.    Brandi Campbell;

    13.    John "Jack" Ryan (police procedures expert);

    14.    Matthew Noedel (criminalistic expert);

15.     Any witness necessary to provide the evidentiary foundation of any item of evidence, photograph, transcript, report, medical record, or other document; and

16.     Any witnesses necessary for rebuttal but not previously anticipated.

## X.  TRIAL PREPARATION

**A.     Exhibits.**

The parties must confer over all trial exhibits.  This does not apply to rebuttal exhibits that cannot be anticipated before trial.  The Parties' exhibit lists shall be filed under separate cover ("Exhibit List") as set forth in the Court's Trial Setting Order [Doc. No. 165], no later than July 2, 2025.  All agreements regarding admitted exhibits, and all objections, including the grounds therefore shall be filed under separate cover ("Objections to Exhibits") as set forth in the Court's Trial Setting Order [Doc. No. 165], by July 9, 2025.  Each party's contested exhibit list must be filed on the date identified.  All exhibits must be marked before trial.  Exhibits must be marked numerically and identify the party offering the exhibit.  The identification number or letter will remain the same whether the exhibit is admitted or not.

**B.     Witness Lists.**

The witness lists of the parties will be filed under separate cover ("Witness List") as set forth in the Court's Trial Setting Order [Doc. No. 165], by no later than July 9, 2025.

Only the witnesses identified on these lists will be permitted to testify (other than solely for impeachment).

Each party's witness list must be filed with the Clerk and served on all parties by _____.  Indicate whether the witness is testifying by deposition or in person.  Objections to use of deposition testimony are due within fourteen (14)

calendar days of service of the witness list.  The objecting party must mark those portions of the

requested deposition testimony to which the party objects.  Marking must comply with D.N.M.LR-

Civ. 10.6.  The parties must confer about any disputes and, if unable to resolve any differences,

must notify the Court in writing at least _____ days before trial.

**C.     Voir Dire.**

      1.      If allowed, do the parties wish to participate in voir dire?

              Plaintiff                    \_\_X\_\_ Yes \_\_\_\_\_ No

              Defendant                 \_\_X\_\_ Yes \_\_\_\_\_ No

              Other Party              \_\_\_\_ Yes \_\_\_\_\_ No

      2.      Each party wishing to participate in voir dire must serve on all parties and file with

the Clerk a pleading entitled "Proposed Voir Dire Questions."  The pleading must identify

the specific areas about which the party wishes to inquire and must set forth proposed voir

dire questions.  This request must be filed at least _____ calendar days prior to jury

selection.

**D.     Jury Instructions and Verdict.**

      **1.      In General.**  The parties must confer about proposed jury instructions.  The Court

will prepare and provide the parties with a Court-proposed set of general "stock"

instructions that will be given.  The stock instructions are available from the Court's web

site.  The instructions that the parties must submit to the Court will be those which set forth

the elements and definitions of the claims or charges, and the elements and any definitions

of any defenses.

2.      **Sources for Instructions.**  If pattern instructions are followed by the judge, the judge will indicate at the pretrial conference his or her preference for the source of instruction.

3.      **Submission of Proposed Instructions.**  The parties must submit one mutually approved set of jury instructions no later than _____ calendar days before trial.  For those instructions the parties were unable to agree upon, each party must submit its own proposed instructions at the same time as submission of the mutually agreed instructions.

4.      **Form of Instructions.**

    a.      Submit sets of double-spaced instructions as follows:

    ___ set(s) of originals without citations and headed "Instruction No. ___"; and

    ___ set(s) with citations and numbered accordingly, one of which will be filed.

    b.      If requested, also submit all instructions in a format compatible with MS Word.  Please refer to the procedures, available on our web site, for electronically submitting proposed text.

    c.      Submit no more than one instruction to a page.

    d.      All deviations from pattern instructions must be identified as "modified" in the citation and the modification must be highlighted in the body of the instruction.

    e.      Submit a cover sheet on all sets of instructions.

5.      **Deadlines for Submitting Instructions**.

    a.      Instructions shall be filed _____ calendar days before trial.

    b.      Supplemental unanticipated jury instructions may be submitted at trial.

**E.      Statement of Case.**

The parties must confer and submit an agreed statement of the case to the Court that will be read to the jury panel during jury selection. The statement must be submitted to the Court _____ days before jury selection.

## XI. OTHER MATTERS

**A.      Settlement Possibilities.**

1.      The possibility of settlement in this case is considered:

___X___ Poor _____ Fair _____ Good _____ Excellent _____ Unknown

2.      Do the parties have a settlement conference set with the assigned Magistrate Judge?

_____ Yes ___X___ No If yes, when? _____

If a settlement conference has already been held, indicate approximate date:

___N/A_____

Would a follow-up settlement conference be beneficial? _____ Yes ___X___ No

3.      Does either party wish to explore any alternatives for dispute resolution such as mediation or a summary jury trial?

If yes, please identify: _____

If no, explain why not: _____

**B.      Length of Trial and Trial Setting.**

1.      This action is a jury trial.

2.      The case is set for trial on August 18, 2025.

3.      The estimated length of trial is 5 day(s).

4.      Jury Selection is set to take place August 15, 2025.

## XII. EXCEPTIONS

None.

## XIII. MODIFICATIONS-INTERPRETATION

The Pretrial Order when entered will control the course of trial and may only be amended *sua sponte* by the Court or by consent of the parties and Court approval. The pleadings will be deemed merged herein.

The foregoing proposed Pretrial Order (prior to execution by the Court) is hereby approved this _____ day of June, 2025.

**BURRIS NISENBAUM CURRY & LACY**


By: _/s/ Julia N. Quesada_____

                             BURRIS, NISENBAUM, CURRY, & LACY LLP
                             DeWITT M. LACY, Esq. (SBN 258789)
                             JULIA N. QUESADA, Esq. (SBN 337872)
                             9701 Wilshire Blvd., Suite 1000
                             Beverly Hills, California 90212
                             Telephone: (310) 601-7070
                             Facsimile: (844) 273-6873
                             dewitt@bncllaw.com
                             julia.quesada@bncllaw.com

                             THE LAW OFFICE OF VICTORIA LUCERO, LLC
                             VICTORIA LUCERO, Esq. (SBN 153074)
                             316 Osuna Rd NE, Building 2
                             Albuquerque, New Mexico 87107
                             Telephone: (505) 609-8133
                             abogada@victorialucerolaw.com

                             *Attorneys for Plaintiff, Jonathan Strickland*

**ROBLES, RAEL & ANAYA, P.C.**


By:     /s/ Luis Robles
        Luis Robles
        Samuel C. DeFillippo
        500 Marquette Ave. NW, Suite 700
        Albuquerque, New Mexico 87102
        (505) 242-2228 (telephone)
        (505) 242-1106 (facsimile)
        luis@roblesrael.com
        chris@roblesrael.com

        *Attorneys for Defendants*


/s/
KENNETH J. GONZALES[1]
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the court's PACER public access system.