IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JONATHAN STRICKLAND,

     Plaintiff,

v.                                                                              2:23-cv-00116-KG-KRS

JOSHUA SAVAGE, in his individual
capacity, et al.,

     Defendants.

## MEMORANDUM ORDER AND OPINION

This matter is before the Court on Defendants' Motion for Judgment as a Matter of Law under Fed. R. Civ. P. 50(a), made on the record on February 20, 2026, and in supplemental briefing, Doc. 323.  Defendants Manuel Frias, Nathan Krause, Anthony Lucero, and Joshua Savage argue that Plaintiff Jonathan Strickland failed to proffer sufficient evidence that each of them personally participated in the alleged constitutional violation.  Doc. 323 at 3.  The Court denies the motion for the reasons below.

### I.    *Findings of Fact*

It is undisputed that, on March 11, 2021, each Defendant Officer discharged his firearm at Mr. Strickland while he sat inside his truck.  Def. Exs. A-1–5.  The officers' body-worn camera footage captures each officer firing his weapon.  *Id.*  It is also undisputed that Mr. Strickland was struck multiple times during the encounter.  Def. Exs. A-20–22.

## II.     Legal Standards

### A.     Rule 50

Courts may grant a motion for a judgment as a matter of law where "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue."  Fed. R. Civ. P. 50(a).  "Judgment as a matter of law is appropriate only if the evidence points but one way and is susceptible to no reasonable inferences which may support the nonmoving party's position."  *Elm Ridge Expl. Co., LLC v. Engle*, 721 F.3d 1199, 1216 (10th Cir. 2013) (quoting *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1156 (10th Cir. 2006)).  "A district court's refusal to grant judgment as a matter of law may be reversed only if the evidence is such that without weighing the credibility of the witnesses the only reasonable conclusion is in [the moving party]'s favor."  *Elm Ridge*, 721 F.3d at 1216 (quoting *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1214–15 (10th Cir.2008)).

### B.     Personal Participation and Seizure

Claims of "excessive force" during "an arrest, investigatory stop, or other seizure" of a citizen "are properly analyzed under the Fourth Amendment's objective reasonableness" test. *Graham v. Connor*, 490 U.S. 386, 388 (1989).  A seizure occurs when officers, "by physical force or a show of authority, terminate or restrain [a person's] freedom of movement through means intentionally applied."  *Brendlin v. California*, 551 U.S. 249, 254 (2007).  "The application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued."  *Torres v. Madrid*, 141 S. Ct. 989, 1003 (2021).

To establish § 1983 liability in an individual capacity, "the plaintiff must establish a deliberate, intentional act" on the part of the defendant "to violate [the plaintiff's legal] rights."  *Parro v. Barnes*, 624 F.3d 1322, 1327–28 (10th Cir. 2010).  Although § 1983 liability must

2

ordinarily be "traceable to a defendant-official's own individual actions," *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013), an "individualized analysis" is not required in an excessive-force case where, like here, "all Defendants actively participated in a coordinated use of force," and they were "engaged in a group effort." *Edwards v. City of Muskogee, Oklahoma*, 841 F. App'x 79, 83 (10th Cir. 2021) (quoting *Est. of Booker v. Gomez*, 745 F.3d 405, 422 (10th Cir. 2014)). "[A] police officer may be responsible for another officer's use of excessive force if the officer...actively participated in the use of excessive force." *Booker*, 745 F.3d at 422 (quoting *Bletz v. Gribble,* 641 F.3d 743, 754 (6th Cir. 2011).

### III.   *Analysis*

#### A.   *A reasonable jury could find that a seizure occurred.*

As a threshold matter, a reasonable jury could find that officers seized Mr. Strickland. A seizure occurs when officers, "by physical force or a show of authority, terminate or restrain [a person's] freedom of movement through means intentionally applied." *Brendlin*, 551 U.S. at 254. Viewing the evidence in the light most favorable to Mr. Strickland, a reasonable jury could find that officers terminated his freedom of movement before the shooting began. The officers executed a PIT maneuver that disabled Mr. Strickland's vehicle and blocked his path. Lieutenant Savage positioned his vehicle nose-to-nose with Mr. Strickland's truck, preventing forward movement, while multiple police units surrounded the truck. By firing rounds and striking Mr. Strickland, Defendant Officers continued the seizure. *See Torres*, 141 S. Ct. at 1003. Accordingly, a jury could find that the seizure occurred before the gunfire and continued during the use of force.

Defendants argue that no Fourth Amendment seizure occurred because not every officer's bullet struck Mr. Strickland. Defendants are correct that the Fourth Amendment is not

3

implicated when an officer discharges a firearm but fails to apply physical force or otherwise terminate a person's freedom of movement.  *See Bella v. Chamberlain*, 24 F.3d 1251, 1256 (10th Cir. 1994) (finding no seizure where shots fired at a fleeing helicopter "did not cause [the plaintiff] to submit nor did they otherwise succeed in stopping him").  That is not the case here. Unlike in *Bella*, where the plaintiff continued to flee after the shots were fired, a reasonable jury could find that Mr. Strickland had already been seized before the gunfire began.  The evidence, viewed in the light most favorable to Plaintiff, supports a finding that officers had disabled his vehicle, blocked his path, and surrounded him, thereby terminating his freedom of movement.  In *Graham*, the Court made clear that the Fourth Amendment governs claims that officers used excessive force "in the course of an arrest, investigatory stop, or other 'seizure,'" and it evaluated whether the force used during that stop was objectively reasonable—even though the stop itself was not the focus of the constitutional violation.  The reasonableness of the force is analytically distinct from the validity of the initial seizure.

> **B.**     *A reasonable jury could find that each Defendant Officer personally participated in the alleged constitutional violation.*

Next, a reasonable jury could find that each Defendant Officer personally participated in the alleged constitutional violation during the execution of the seizure. To establish individual liability under § 1983, a plaintiff must show "a deliberate, intentional act" by the defendant "to violate [the plaintiff's legal] rights."  *Parro v. Barnes*, 624 F.3d 1322, 1327–28 (10th Cir. 2010). The violation at issue here is the alleged use of objectively unreasonable deadly force during a seizure.  The undisputed evidence shows that all four officers fired their weapons during the same encounter, and a jury could reasonably conclude that they acted as part of a single, coordinated effort to apply objectively unreasonable deadly force.  Mr. Strickland was struck multiple times during a continuous volley of gunfire, producing a single, indivisible injury.

Where multiple officers concurrently produce such an injury through their intentional use of force, each officer who actively participated may be held responsible for the resulting harm. *Booker*, 745 F.3d at 422. Here, a reasonable jury could find that each Defendant's deliberate discharge of his firearm contributed to the same indivisible injury and thus constituted personal participation in the alleged constitutional violation.

This case is analogous to *Booker*, 745 F.3d at 416.  There, the Tenth Circuit held that an individualized parsing of force was unnecessary where "all Defendants actively and jointly participated in the use of force" and were "engaged in a group effort." *Id.* at 422.  The officers applied different forms of force—one used a carotid hold, others restrained and handcuffed the plaintiff, and another deployed a taser—but the court concluded that "[i]f excessive force occurred, all deputies contributed to it." *Id.*  Because the deputies' combined actions produced an indivisible injury, each could be held responsible. *Id.* (quoting the principle that where "several independent actors concurrently or consecutively produce a single, indivisible injury, each actor will be held jointly and severally liable for the entire injury").  The same reasoning governs here.  It is undisputed that each Defendant intentionally discharged his firearm at Mr. Strickland while he sat inside his truck.  The coordinated gunfire struck him more than ten times. As in *Booker*, the Defendant Officers' actions were not isolated uses of force; they were part of a single, coordinated use of force that produced indivisible injury.

Although *Booker* analyzed excessive force under the Fourteenth Amendment because the plaintiff was a pretrial detainee, its discussion of joint participation and personal liability under § 1983 applies with equal force here, where the alleged use of force occurred during a Fourth Amendment seizure.  Indeed, *Bletz*, which the Court cites for the proposition that ""[A] police

5

officer may be responsible for another officer's use of excessive force if the officer...actively participated in the use of excessive force," arose in a Fourth Amendment context.

Defendants argue that Mr. Strickland cannot establish that each officer personally participated in the use of force because he cannot prove that each officer's bullet actually struck him.  Defendants correctly cite *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) for the proposition that § 1983 liability must be "traceable to a defendant-official's own individual actions" and that personal participation is analyzed at the first step of the qualified-immunity inquiry.  *Id.* at 1227–28.  Their reliance on *Pahls*, however, is misplaced.  The Tenth Circuit's concern in that case was that the plaintiff relied on undifferentiated allegations that "defendants" collectively violated his rights without more specificity.  *Id.* at 1225–26.  The court emphasized that a plaintiff must "identify specific actions taken by particular defendants," and that liability must rest on conduct "traceable to a defendant-official's own individual actions."  *Id.*  That concern is not present here.  Mr. Strickland does not rely on collective allegations.  Rather, he relies on Defendant Officers' own body-worn camera footage showing that each Defendant Officer personally discharged his firearm during the encounter.  Therefore, a reasonable jury could find that Defendant Officers personally participated in the use of force.

Finally, Defendants' qualified immunity argument is premature at this stage because the first prong—whether the evidence establishes a constitutional violation—turns on disputed issues of historical fact that are properly resolved by the jury.  "If there is a factual dispute involving an issue on which qualified immunity turns, summary judgment based on a qualified immunity defense in a 42 U.S.C. § 1983 action is inappropriate."  *Gonzales v. Albuquerque Pub. Schs.*, 2012 WL 13080124, at *4 (D.N.M.) (citing *Archer v. Sanchez*, 933 F.2d 1526, 1533 n.1 (10th Cir. 1991).  The reasonableness of the officers' use of deadly force here depends on findings of

fact, including whether Mr. Strickland posed an immediate threat at the moment force was used, whether officers reasonably believed he had a gun, and whether the officers feared for their safety for the duration of the incident.  These are classic jury questions.  The Court has already determined that special interrogatories will be submitted to the jury to resolve the specific factual predicates underlying the qualified immunity analysis.  Those findings will permit the Court, if necessary, to eventually address the legal question of qualified immunity.  Because a reasonable jury could find facts establishing a Fourth Amendment violation, judgment as a matter of law on qualified immunity is not appropriate at this time.  Defendants' Motion for Judgment as a Matter of Law is denied.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales_____
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.